**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Kimberly A. Poirier, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> City of Myrtle Beach and City of ) <br> Myrtle Beach Police Department, ) <br> ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No.: 4:11-cv-01731-JMC <br><br> **OPINION AND ORDER** |

This matter is before the court for a review of the Magistrate Judge's Report and Recommendation ("Report") [Dkt. No. 39], which was filed on January 16, 2013. Kimberly Poirier ("Poirier") alleges sex discrimination, age discrimination, retaliation and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* as a result of actions taken by Defendants The City of Myrtle Beach and The City of Myrtle Beach Police Department ("Defendants"). The Magistrate Judge's Report recommends that this court grant Defendants' Motion for Summary Judgment [Dkt. No. 25] as to all claims. Upon review of the Report and the record in this case, the court grants Defendants' Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts as viewed in the light most favorable to Plaintiff are as follows.

In February 2001, Poirier was hired by Police Chief Warren Gall as a Police Officer with The City of Myrtle Beach Police Department (the "MBPD"). Poirier received positive

1

evaluations throughout her employment with the MBPD up to and including her final evaluation in March 2009. In these evaluations, Poirier's supervisors stated she "consistently exceeds expectation" or "substantially exceeds expectation." [Dkt. No. 31-9 – 31-12]. Additionally, Poirier received accolades from community groups and individual community members. [Dkt. No. 31-1 – 31-7]. Poirier's record also includes fourteen prior disciplinary actions between May 2002 and May 2009 for which Poirier received either oral counseling or a written reprimand. [Dkt. No. 25-5, at 72-73].

In August 2009, Poirier became embroiled in a disciplinary matter that ultimately led to her resignation. Poirier's supervisor, Corporal Truex, contacted his chain of command about two issues involving Poirier. [Dkt. No. 25-5, at 16-17]. First, Corporal Truex complained that Poirier disobeyed an immediate directive by conducting a traffic stop for a minor infraction during a weather emergency and widespread power outage and then falsely described the infraction. *Id.* Poirier received a written reprimand on August 31, 2009, for this violation. [Dkt. No. 25-5, at 72-73].

Second, Corporal Truex reported to his chain of command that Poirier failed to report damage to the bumper of the police vehicle assigned to her, vehicle 1080. [Dkt. No. 25-5, at 16-17]. The vehicle damage was first brought to his attention by another officer on August 12, 2009. *Id.* Corporal Truex contends that when he asked Poirier about the damage, she stated that she first noticed it on August 3, 2009, and that, while she did not report the damage to her superior officers as department policy required her to do, she had noted the damage on the vehicle inspection log on August 3, 2009. *Id.* Corporal Truex also addressed the evidence regarding the likely cause of the damage. *Id.* First, video from the police car's onboard camera from August 12, 2009, recorded the rear of the car dipping and an audible thud when Poirier hit a

pothole while driving 27 miles per hour on the shoulder of the road. Second, the damage to the car, as first noticed by other officers on August 12, appeared fresh, and the area around the damage showed grass, dirt and mud under the bumper. *Id*. Corporal Truex contended that this evidence was consistent with the theory that Poirier had hit a pothole on August 12, 2009, which caused the damage to the bumper of vehicle 1080. *Id.* Additionally, the vehicle inspection log on which Poirier reported the bumper damage showed two different entries for August 3, 2009, in two different colors of pen ink. *Id.*

Sergeant Bertang wrote in a subsequent memorandum to his superior that the evidence suggested that Poirier had altered the August 3 vehicle inspection log after the actual incident on August 12 in an effort to avoid responsibility for the damage and to cover up her failure to report the damage to her supervisors. [Dkt. No. 25-5, 45-46]. The chain of command met on August 18, 2009, to discuss the matter, after which Captain Vella recommended to Chief Gall that Poirier be required to submit to a polygraph examination. [Dkt. No. 25-5, at 52.] Chief Gall approved that examination. *Id*. Poirier later took a polygraph examination,[1] the results of which indicated deception on those questions asking whether Poirier lied about the date on which she first noticed the vehicle damage and whether Poirier falsified the vehicle inspection log. [Dkt. No. 25-5, at 66]. On August 27, Captain Vella reported the results of the polygraph examination to Chief Gall and recommended a department level hearing on the issue. [Dkt. No. 25-5, 67-68]. As a part of the hearing and the related inquiry, the other officers who regularly drove vehicle 1080 were questioned. [Dkt. No. 25-5 at 70, 76-78]. The chain of command subsequently reached the unanimous decision that Poirier was not salvageable as an officer. [Dkt. No. 25-5, at 79].

---

[1] It appears from the record that Poirier also volunteered to take a polygraph examination.

3

On September 4, 2009, Chief Gall met with Poirier, reported that her command staff found her unsalvageable as an officer, and asked her to resign. [Dkt. No. 25-5, at 81-82]. Poirier requested additional time to consider her options and went on leave with pay. *Id.* On September 8, 2009, Chief Gall submitted his written request to City Manager Tom Leath for approval to terminate Poirier's employment for violating city policy and department regulations. *Id.* In support of his request, Chief Gall cited 1) Poirier's failure to conduct a daily vehicle inspection and failure to notify her supervisor of the damage to vehicle 1080; 2) Poirier's unsafe driving in response to the call on August 12, 2009, during which she hit the pothole that caused the damage; and 3) Poirier's falsification of the vehicle inspection log. *Id.* The request also cited Poirier's "extensive disciplinary history" and "continuing pattern of non-compliance with established procedures." *Id.* The report concludes by stating that Poirier "has lost the trust of her supervisors who feel that she was dishonest and deceiving in her handling of the situation with the damages to vehicle 1080." *Id.* Poirier's termination was approved on September 9, 2009, but Poirier decided to resign instead. [Dkt. No. 25-5, at 89].

On February 2, 2010, Poirier filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination, age discrimination, retaliation and a hostile work environment. [Dkt. No. 25-7, at 19]. Poirier alleged that in July 2009, she was denied a promotion to the position of Corporal due to her sex and age, and younger male officers were promoted instead of her. *Id.* Poirier also alleged that in 2008, she was involuntarily transferred to the night shift. *Id.* Poirier complained that two male officers were transferred to the day shift more quickly than other female officers. *Id.* Poirier also complained that she was denied a transfer to a specialized unit, but that three younger males

4

with less experience were transferred instead of her.  *Id.*  Additionally, Poirier claimed that she was being screened for illegal drug use more than other officers.  *Id.*

On March 22, 2011, the EEOC issued its Notice of Right to Sue to Plaintiff as to her claims for sex discrimination and retaliation under Title VII and age discrimination under the ADEA.  [Dkt. No. 25-7, at 21].  On June 3, 2011, Poirier filed the present action in the Horry County Court of Common Pleas bringing claims of sex discrimination, age discrimination, retaliation and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* and the Age Discrimination in Employment Act 29 U.S.C. § 621 *et. seq.* [Dkt. No. 1].  On July 18, 2011, Defendants removed the case to federal court. [Dkt. No. 1].  On April 23, 2012, following discovery, Defendants filed a Motion for Summary Judgment.  [Dkt. No. 25].

On January 16, 2013, the Magistrate Judge issued a Report and Recommendation [Dkt. No. 39] recommending that this court grant Defendants' Motion for Summary Judgment [Dkt. No. 25] as to all claims.  Specifically, the Magistrate Judge determined that Poirier's discrimination claims based on the involuntarily transfer, the denials of transfers, the denials of promotions and the claims of being subjected to random drug testing on a discriminatory basis are all time-barred pursuant to 42 U.S.C. § 2000e-5(e)(1).  As a result, the Magistrate Judge determined that the only claims properly before the court are those claims of sex and age discrimination and retaliation based upon Poirier's involuntary resignation and her hostile work environment claim.  Poirier timely filed Objections to the Magistrate Judge's Report and Recommendation. [Dkt. No. 40].

5

**STANDARD OF REVIEW**

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. *See Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). The recommendation has no presumptive weight. *Id.* The responsibility to make a final determination remains with this court. *Id.* This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S. C. § 636 (b)(1).

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary

6

judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

Poirier first objects to the Magistrate Judge's recitation of the facts, arguing that the Magistrate Judge erroneously viewed the facts in a light more favorable to Defendants. The facts Poirier emphasizes do not impact the dispositive portions of the Magistrate Judge's Report nor do they create genuine issues of material fact on the issue of whether Defendants harbored a discriminatory intent that would prevent the court from granting Defendants' summary judgment motion.

Poirier reasserts that she "felt targeted" by her supervisors, though she offers no evidence that she was in fact targeted, much less that she was being targeted because of her age or sex. Poirier asserts that she was discouraged from seeking a meeting with Chief Gall, but she does not say who discouraged her, why she wanted to meet with him, or how this relates to her discrimination claims.

Poirier also claims that one of the officers in her chain of command, Sergeant Bertang, was duplicitous in his dealings with her. She further asserts that there were rumors that Sergeant Bertang did not like women officers and that he took actions against Poirier without investigation. Poirier's claims of rumors, without more, cannot be relied on to defeat summary judgment. *See Maryland Highways Contractors Assoc., Inc. v. Maryland,* 933 F.2d 1246, 1251–

7

1252 (4th Cir. 1991) (holding that hearsay evidence that would not be admissible at trial cannot be considered on a motion for summary judgment).

While Poirier challenges the Magistrate Judge's focus on her disciplinary record to the exclusion of her positive evaluations during the same period of time, the Report necessarily includes both positive and negative aspects of Poirier's employment because both categories are relevant to the full analysis of her discrimination claims.  In addition, Poirier's positive evaluations do not negate her prior discipline issues, nor do they contradict the primary rationale for her termination – the circumstances surrounding the damage to vehicle 1080.

Poirier further asserts that the Magistrate Judge considered the facts in a light most favorable to Poirier's supervisor, Corporal Truex, ostensibly arguing that the Magistrate Judge believed Truex's assertion that Poirier failed to report the vehicle damage and that she forged the vehicle inspection log.  The Magistrate Judge did not weigh the evidence presented in support of the parties' arguments; he merely described the circumstances leading up to Poirier's resignation. Since the issues related to the vehicle damage were central to the MBPD's decision to terminate Poirier's employment, the Magistrate Judge properly included this recitation of facts in his Report.

Upon review of the Magistrate Judge's Report, the court finds that the Magistrate Judge gave appropriate consideration to the facts in this case.

**Timeliness of Charges**

Poirier does not object to the Magistrate Judge's determination that many of the claims she made in her EEOC complaint are now time barred pursuant to 42 U.S.C. 2000e-5(e)(1).

However, Poirier contends that, even if Defendants' actions prior to April 17, 2009,[2] are not actionable, they can be used as evidence of differential treatment under a hostile work environment theory. Section 2000e-5(c) does not bar "an employee from using the prior acts as background evidence in support of a timely claim" in hostile environment cases. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The court finds that the Magistrate Judge appropriately considered the entire record including Poirier's past claims of alleged discriminatory actions in making his finding regarding the hostile work environment claim.

**Age and Sex Discrimination[3]**

Claims for age or sex discrimination follow the familiar proof scheme developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). In this approach, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id*. If she can do so, the burden shifts to the employer to present a legitimate, nondiscriminatory reason for its employment action. *Id.* If the employer meets that burden, the burden shifts back to the employee to show that the given reason was mere pretext for discrimination. *Id.*

In this case, the Magistrate Judge assumed for the sake of his analysis that Poirier could establish the *prima facie* case of discrimination. However, the Magistrate Judge also found that Defendants presented a legitimate, nondiscriminatory reason for seeking Poirier's termination. That rationale specifically included "several violations of policy, including failing to notify

---

[2] Poirier first asserted that the promotion of the younger male officers occurred in June 2009 in which case her claim would have been timely. Through discovery, the parties learned that the promotion of the younger male officers actually occurred prior to April 17, 2009, placing her claims beyond the statute of limitations.

[3] The parties disagree as to the applicable law. Defendants argue that the law of constructive discharge should apply given that Poirier resigned instead of being terminated. Poirier argues that her resignation was forced and is therefore an adverse employment action. The Magistrate Judge analyzed the case in terms of an adverse employment action.

supervisors of damage to her vehicle, responding to an emergency in an unsafe manner, and falsifying documents regarding the damage to her vehicle, *in addition to her history of disciplinary actions*." Magistrate Judge's Report and Recommendation [Dkt. No. 39, at 22] (emphasis added).

Poirier objects to this finding, alleging that the court relies on Poirier's history of minor disciplinary actions, none of which, either separately or together, warranted termination, especially in light of the many positive evaluations Poirier received during the same time period. However, the Magistrate Judge considered Poirier's disciplinary actions as merely one component of Defendants' rationale for seeking Poirier's termination. Furthermore, Poirier could not demonstrate that Defendants' asserted rationale was a pretext for discrimination.

Poirier reasserts her argument that the failure to discipline Corporal Truex, a male officer, whom she claims had a similar safety violation on his record, provides evidence of discriminatory treatment. Presumably, Poirier raises this issue again in an effort to demonstrate that her termination was a pretext for discrimination against her. To establish an inference of discrimination in a disparate discipline case, a plaintiff "must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (internal citations omitted). The Magistrate Judge determined that Poirier failed to show how Corporal Truex's conduct was sufficiently comparable to the conduct for which Defendants sought Poirier's termination. Furthermore, as noted above, safety was only one of the reasons why Defendants recommended her termination; the record suggests that Poirier's alleged failure to inform her

10

superiors about the damage to vehicle 1080 and her alleged efforts to cover up her role in causing the damage led her supervisors to loose trust in Poirier.  Poirier points to no such alleged dishonesty and no such breach of trust on the part of Corporal Truex that would make her disciplinary records comparable to that of Corporal Truex.

Finally, Poirier insinuates that Corporal Truex harbored ill-will against her, arguing that Chief Gall's termination decision was based on a recommendation by Corporal Truex, "the individual who was promoted over the Plaintiff and that the Plaintiff pointed out was treated differently."  Objections to the Magistrate Judge's Report and Recommendation [Dkt. No. 40, at 8].  Poirier's apparent belief that Corporal Truex orchestrated a conspiracy against her is not sufficient to demonstrate actionable discriminatory intent on the part of any of her supervisors.

**Retaliation**

Title VII provides that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge,  . . . in any manner in an investigation  . . .  under this subchapter."  42 U.S.C. § 2000e-3(a).  A claim for retaliation is analyzed in similar fashion to a claim for discrimination; a plaintiff must first demonstrate a *prima facie* case for retaliation, at which point "the burden . . . shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Ross*, 759 F.2d at 365 (applying the *McDonnell Douglas* burden-shifting scheme in the analysis of retaliation claims).  If an employer is able to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove that the employer's stated reason is pretext for discrimination.  *Id.* at 803.

The Magistrate Judge assumed that Poirier could demonstrate a *prima facie* case of retaliation. As with Poirier's age and sex discrimination claims, the Magistrate Judge found that Defendants had presented a legitimate, non-retaliatory reason for its decision to terminate her. That reason included Poirier's safety violations on August 12, 2009, and the chain of command's finding that Poirier had been dishonest regarding the damage to vehicle 1080. The Magistrate Judge also found that Poirier failed to show that Defendants' asserted reason was a pretext for discrimination.

In her objections, Poirier reasserts arguments from her Response to Defendants' Motion for Summary Judgment [Dkt. No. 31], including her insinuation that her supervisors retaliated against her because she had been vocal about differential treatment within the department. As evidence of this, she points to a conversation she had with Corporal Truex, which he memorialized in an email to his chain of command. [Dkt. No. 25-5, at 26]. In that conversation, Poirier complained that "she had heard from other officers" that another male officer was not disciplined for using profanity over the police radio. Poirier had received oral counseling on two prior occasions for using profanity over the police radio. *Id.* Corporal Truex responded that he was not aware of the alleged situation with the other officer, but informed Poirier that such decisions to discipline were necessarily incident specific. *Id.* Poirier informed Corporal Truex of her intention to address the lack of consistency in disciplinary actions with Chief Gall, and Corporal Truex responded by telling her to follow the appropriate chain of command. *Id.*

Poirier further asserts that Defendants' rationale for seeking her termination only emerged after Poirier alleged that she was the subject of differential treatment. While it is true that Defendants decided to terminate Poirier in the weeks following this complaint of differential treatment, it is also true that Poirier made this complaint to Corporal Truex the day after he

informed his superiors about "two major issues" involving Poirier – the unauthorized traffic stop during the extreme weather event and the events related to the damage to vehicle 1080. A review of the record reveals that her supervisors' subsequent communications focus on the events surrounding the vehicle damage, and that these communications are remarkably consistent in their concern regarding Poirier's alleged efforts to avoid taking responsibility for the damage to her vehicle, her alleged efforts to cover up her failure to report the damage, and the unsafe driving tactics that Poirier employed on the day the car was damaged. None of these communications refer to Poirier's complaints about differential treatment nor do they raise any inference of discriminatory or retaliatory treatment as a result of her disparate treatment allegations. In fact, the first and only time the issue of differential treatment based on her sex emerges is in an email from Chief Gall to City Manager Tom Leath regarding the damage to vehicle 1080, in which he states: "It's curious that it appears [Poirier] is making this a male/female issue w/ her comments referring to the others who have driven the car as 'male' officers." [Dkt. No. 25-5, at 85]. When this email was written, Chief Gall had already informed Poirier that the chain of command found her unsalvageable, and he had already asked her to resign.

Poirier further points to differential treatment regarding the investigation into the damage to vehicle 1080, noting that of the four officers who drove the car, only she, the female officer, was asked to take a polygraph examination. The record shows that the three other male officers were questioned about the incident both initially and again at the departmental hearing on the matter. Furthermore, the majority of the evidence initially collected suggested that Poirier was responsible for the damage. As a result, Defendants have presented a legitimate, nondiscriminatory reason for requesting that Poirier take a polygraph examination.

13

Ultimately, Poirier's continued attempt to establish differential treatment is not relevant to the Magistrate Judge's finding, since he assumed that Poirier could make out a *prima facie* case for retaliation. Poirier offers nothing in her objections to refute the Magistrate Judge's determination that Defendants presented a legitimate, nondiscriminatory reason for their actions, nor does Poirier provide any additional evidence to suggest that the legitimate, nondiscriminatory reason is mere pretext for a retaliatory purpose.

**Hostile Work Environment**

In order to demonstrate that she was subjected to a hostile work environment, Poirier must allege that: "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender [or] age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). "In determining whether an actionable hostile work environment claim exists, [courts] look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (internal citations omitted).

The Magistrate Judge noted that Poirier was unclear in her filings as to what harassment she suffered that created a hostile work environment. Nevertheless, the Magistrate Judge assumed that Poirier sought to rely on the complaints alleged in her EEOC discrimination charge, including the instances of discipline during her career with the MBPD, her denials of promotions and transfers, and the allegation that she was subjected to more drug testing than other officers. The Magistrate Judge correctly found that Poirier failed to present sufficient

evidence to create an issue of fact as to whether the harassment Poirier allegedly experienced was based on age or sex and, if she had experienced any harassment, whether it was sufficiently severe and pervasive to alter the conditions of her employment.

Poirier's objections confirm that she intended to use these allegations, which were otherwise time-barred under § 2000e-5(e)(1), as a basis for establishing her hostile work environment claim. However, she points to no previously unconsidered facts in her objections. Instead, Poirier reiterates "individuals who were younger and male were treated better than Plaintiff, specifically [Corporal] Truex." Objections to the Magistrate Judge's Report and Recommendation [Dkt. No. 40, at 9]. This is a reference to Poirier's claim that Truex received a promotion to the position of Corporal while Poirier did not and that Corporal Truex was not disciplined as severely as Poirier for safety violations. Poirier also claims that she was "criticized and harassed" by supervisors who "continuously presented the Plaintiff with issues regarding each and everything (sic) that happened in the department." Objections to the Magistrate Judge's Report and Recommendation [Dkt. No. 40, at 10]. This last claim is too vague for meaningful analysis.

The claims in Poirier's EEOC charge do not constitute harassment. While Poirier's claim that she was subjected to more drug testing than other officers could theoretically amount to harassment, Poirier has presented nothing more than mere allegations on this issue. She has not provided any evidence, other than her own statements of what others told her about being drug tested, that she was subjected to more drug testing than other officers generally, or that she was subjected to more testing than younger officers or officers of the opposite sex in particular.

Additionally, Poirier has not demonstrated that the four promotion denials in as many years and the two instances in which Poirier was denied a transfer constitute severe or pervasive

15

behavior sufficient to establish actionable harassment in this case. Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21-22. In this case, denials of transfers and denials of promotion over several years, without proof of intimidation, ridicule and insult, do not in and of themselves create a hostile work environment. Finally, Poirier has failed to demonstrate that her age or sex motivated her superiors' decisions to deny her promotion or her requests to transfer. For these reasons, the court finds no merit in Poirier's hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation [Dkt. No. 39] and **GRANTS** Defendants' Motion for Summary Judgment [Dkt. No. 25].

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

March 5, 2013
Florence, South Carolina